**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| |
|---|
| STAFFORD  SHEEHAN,<br><br>Plaintiff,<br><br>-against-<br><br>AIR COMPANY HOLDINGS, INC.,<br><br>Defendant. |

C.A.  No.:

**Jury Trial Demanded**

### COMPLAINT

Plaintiff, Dr. Stafford Wheeler Sheehan ("Dr. Sheehan" or "Plaintiff"), by and through his undersigned counsel, asserts this action against Defendant Air Company Holdings, Inc. ("ACH" or the "Company"), and states as follows:

### NATURE OF THE ACTION

1.      Dr. Sheehan, the former Chief Technology Officer ("CTO") and co-founder of Defendant ACH, brings the instant action in order to hold the Company accountable for its egregious misconduct in unlawfully terminating his employment, purportedly for "Cause," in retaliation for his engaging in protected whistleblowing activity.

2.      After Dr. Sheehan had been sounding the alarm for weeks about serious compliance, contractual and regulatory violations at ACH, ACH abruptly placed Dr. Sheehan on a purported leave of absence, and then terminated him for cause, purportedly due to his management style and other pretextual reasons, including Dr. Sheehan's supposed breach of the confidentiality obligations he owed ACH pursuant to a Proprietary Information agreement.  After Dr. Sheehan (through counsel) approached ACH's counsel in an effort to determine whether a mutually acceptable resolution of their dispute could be reached short of litigation, and with

knowledge that Dr. Sheehan was poised to bring the instant whistleblower action, ACH's counsel expressed a willingness to mediate. However, ACH then stalled on moving forward with mediation while surreptitiously preparing to beat Dr. Sheehan to the courthouse via the filing of an anticipatory bad faith and meritless action for declaratory and other relief in Delaware Chancery Court. In so doing, ACH seeks to recast what is properly viewed as an employment dispute involving the retaliatory discharge of a whistleblower who worked in New York, at ACH's Brooklyn headquarters, under the protection of the New York labor laws—and for which Dr. Sheehan has a right to a jury trial—into a corporate governance dispute under Delaware law. This Court should not reward ACH's gamesmanship, and the instant dispute should proceed in this Court without further delay.

3.      In or about 2016, Dr. Sheehan, a scientist and inventor with a degree in Chemistry from Boston College, and a Ph.D. in Physical Chemistry from Yale University, invented and began to develop technology for converting carbon dioxide and water into a usable fuel that can be produced on-site while also reducing greenhouse gases. Beginning in 2019 and continuing over the next five years, he assigned the portfolio of his fuel technology patents to ACH, a company he co-founded. Dr. Sheehan was employed as the CTO of ACH from August 2017 until his unlawful termination on December 30, 2024, and served as a director of the Company from October 2020 until on or about January 9, 2025.

4.      During the course of his employment and throughout his service as a director, Dr. Sheehan continually (i) acted in good faith, in what he reasonably believed was in the best interest of the Company, (ii) responded truthfully to due diligence and other questions from investors (who were subject to non-disclosure agreements and confidentiality obligations) based on information available at the time, and (iii) negotiated with potential investors with the full knowledge and

involvement of key stakeholders involved with the operations of the ACH Board (the "Board"), including the Chairman of the Board, Steven Jbara ("Mr. Jbara"), the Chief Executive Officer, Gregory Constantine ("Mr. Constantine"), certain Board directors, and others in management. Indeed, Dr. Sheehan's actions were consistent with the Board's express direction, as is confirmed by contemporaneous communications with Mr. Jbara and other directors, as well as by the actions taken by Mr. Jbara and other directors.

5.      Despite his repeated efforts to improve ACH, including its internal controls relating to compliance with ███████████ and regulations, Dr. Sheehan was fired by the Company in retaliation for bringing the Company's violations of regulations ███████████ ███████ to the attention of both members of the Board ███████████, as described below.

6.      Plaintiff's employment relationship with ACH is governed by New York law. In addition, the Proprietary Information Agreement entered into by Dr. Sheehan specifies application of New York law.

7.      As CTO of the Company, Plaintiff received valuable compensation and benefits in connection with his employment.  Moreover, through the course of Plaintiff's employment, Plaintiff was a Participant in two non-statutory Stock Option Agreements pursuant to which he was granted the right to purchase shares of Common Stock in the Company (the "Option Agreements") (Exs. 1-2).  As set forth herein, as a result of Plaintiff's unlawful termination for purported "Cause," Plaintiff was stripped of his rights under the Option Agreements to the tune of tens of millions of dollars in addition to suffering other substantial damages.

## THE PARTIES

8.    Plaintiff Stafford Sheehan is a natural person, and a citizen of, and domiciled in, the State of Rhode Island.

9.    Defendant ACH is a Delaware corporation with its principal place of business at 407 Johnson Avenue, Brooklyn, New York 11206-2805.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000.

11.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Eastern District of New York, as further set forth herein.

## JURY TRIAL DEMANDED

12.    Plaintiff demands a trial by jury on all issues so triable.

## STATEMENT OF THE CASE

13.    Defendant ACH is an engineering company founded by Dr. Sheehan in 2017 that, in layman's terms, utilizes Dr. Sheehan's patented technology to convert carbon dioxide and water into "jet fuel."

14.    The ability to convert carbon dioxide and water into "jet fuel" on- site attracted the attention of the National Aeronautics and Space Administration ("NASA"), the Department of Defense ("DoD"), the DoD's Defense Innovation Unit ("DoD's DIU") and the National Science Foundation ("NSF").

15.    Due to the sensitive nature of ACH's work and its contracts with the government, ACH is subject to significant compliance-related obligations.

16.     At various times throughout the relevant period, ACH's Board began engaging in conduct which Dr. Sheehan believed was putting ACH at risk ███████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████ Dr. Sheehan brought these concerns to the Board which responded with resistance, denial and anger.

17.     Certain directors and officers, as well as the representatives of certain venture capital funds resisted ACH investing the time and expense necessary to implement proper controls or address compliance-related issues when they occurred.  Rather than take the steps necessary to ensure ██████████████████, such individuals instead pushed ACH to illegally retaliate against Dr. Sheehan for raising his concerns.

18.     Dr. Sheehan engaged in protected whistleblower activity on at least four separate occasions, reporting several ██████████████████████ to the CEO and the Chairman of the Board who did nothing to stop or remediate ██████████.  Dr. Sheehan also refused to follow a Board directive that he make knowingly false statements to the Company's federal-agency counterparties which included NASA, the DoD, the DoD's DIU and the NSF.

19.     In retaliation for Dr. Sheehan reporting these and other unlawful or improper matters, ACH's Board placed Dr. Sheehan on an involuntary administrative leave, and then terminated his employment, allegedly for cause, and stripped him of his directorship. By mischaracterizing his termination as for cause, ACH, among other things, deprived Dr. Sheehan of his right to exercise vested stock options which have a fair market value of tens of millions of

dollars, as well as subjected him to severe reputational harm and other damages. He would, in other words, be illegally forced out of the Company he co-founded.



6

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ ▌

22.    ████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

23.    ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

24.    ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

───────────────

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████

25.     Until Dr. Sheehan's involuntary placement on administrative leave in October 2024, Dr. Sheehan and other ACH employees,[4] were working diligently ████████████ to develop more robust information controls at ACH. ████████████████████

██████████████████████████████████████████████

█████████████████████████████████ However, Board members, including Mr. Constantine in particular, dismissed their concerns and deprioritized ██ ███████████████████ urged by Dr. Sheehan and other employees.

Dr. Sheehan Reports ███████████████████████

26.     Around late April 2024, ██████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████ Dr. Sheehan reported his concerns to Mr. Jbara, the Chairman of ACH's Board, on April 30, 2024.

27.     The next day, Dr. Sheehan submitted an e-mail memo to the Company's Board, escalating his concerns regarding ████████████████████████ Based on

---

[4] One of these employees resigned from ACH on October 15, 2024, after refusing the Board's request to deliver a scripted message to █████ that materially misrepresented Dr. Sheehan's status at ACH following Dr. Sheehan's placement on involuntary leave from the Company.

information available to Dr. Sheehan through October 5, 2024, he is unaware of any action the Board took to address the ████████████████████████████████ that he flagged in his May 1, 2024 memo.  To Dr. Sheehan's knowledge, the Board still has not taken any appropriate action to address these issues.

<u>Dr. Sheehan Reports</u> ████████████████████

28.    In or around April 2023, around the time Dr. Sheehan began vocalizing his concerns about ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████ Dr. Sheehan notified Mr. Constantine, Mr. Jbara, and Arthur Souritzidis ("Mr. Souritzidis"), another member of ACH's Board, ████████████████████████

████████████████ Dr. Sheehan continued to raise this issue for months thereafter, but ACH failed to investigate or take action.

29.    In or around September 2024, several ACH employees informed Dr. Sheehan that

████████████████████████████████████

████████████████████████████████████

████████████████

████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████

30. ██████████████████████████████████████████
████████████████████████████████████████████████████
████████████████ Dr. Sheehan informed Mr. Constantine, Mr. Jbara and other directors
about his concerns. ███████████████████████████████
████████████████████████████

<u>Dr. Sheehan Reports</u> ██████████████████

31. ██████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████.

32. █████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████.



33. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████.

34. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████.

35.     Dr. Sheehan also reported the incident to Mr. Jbara.  During their conversation, Mr.
Jbara did not indicate that he shared Dr. Sheehan's level of urgency, thus leading Dr. Sheehan to
believe Mr. Jbara would do nothing to address ████████████ much like Mr. Jbara had
shrugged off Dr. Sheehan's report alerting him to ███████████████████████████
████████████████.

36. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

37.     On September 24, 2024, ACH held a leadership meeting where it was discussed
that Dr. Sheehan reported ███████████████████ Although the company indicated
that it would investigate, Dr. Sheehan is not aware of any corrective action ACH took as a result
of the incident.

38.     On September 26, 2024, three days after Dr. Sheehan reported this latest security breach relating to the ████████████ the Company's Board informed Dr. Sheehan that it was moving forward with a "Leadership Review" which had been recently suggested by a director.

39.     On information and belief, the Leadership Review was conducted in a manner as to produce negative results regarding Dr. Sheehan as pretext for placing him on leave in retaliation for his reporting of several ████████████ The results of the Leadership Review were never shared with Dr. Sheehan in writing, instead, he was told orally that he needed to improve his management style.

40.     ████████████████████████████████████████████
████████████████████

41.     That same day, the CEO of a key investor requested and met with Dr. Sheehan to discuss the recent events at ACH, ████████████████████████ The investor's CEO did not express concern regarding the incident, and instead implied that Dr. Sheehan should have reported the incident to Mr. Constantine, ACH's CEO (to whom Dr. Sheehan did not report within the organization), rather than to ████████████████████ ████████ and/or outside counsel, and by failing to do so, Dr. Sheehan had allegedly engaged in insubordination.

████████████████████████████████████

42.     ████████████████████████████████████████████
████████████████████████████

43.     ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████

<u>Dr. Sheehan Refuses to Make False Statements and</u>
<u>ACH  Places Dr. Sheehan on Administrative Leave</u>

44.     On  October  4,  2024,  ██████████████████████████████

████████████████  Mr. Jbara emailed Dr. Sheehan and instructed him to stay away from

ACH's premises. The next morning, October 5, 2024, Mr. Jbara suspended Dr. Sheehan's access

to his company email without prior notice.  Dr. Sheehan took no steps to prevent Mr. Jbara from

accessing his emails, nor did he instruct anyone at ACH to try to prevent such access.

45.     On October 6, 2024, the Board held an "emergency" meeting. Dr. Sheehan, as a

Board member and per ACH's bylaws, was entitled to notice of this meeting, but such notice was

not properly delivered to him. At the Special Meeting, the Board voted to place Dr. Sheehan on

involuntary administrative leave of absence until January 1, 2025 and continued suspending Dr.

Sheehan's access to his ACH email.

46.     Later that day, Mr. Jbara sent Dr. Sheehan a letter instructing him to refrain from

communicating with any of the Company's employees, customers, investors or potential investors

during his leave.  The letter was sent in the evening of October 6, 2024, but back-dated to October

5, 2024.

47.     On October 16, 2024, ACH, through counsel, asked Dr. Sheehan to reach out to

"key ███ contacts, business partners, and employees," via phone or text, but not via his work

email, which he still could not access. ACH sent a draft "script" of talking points outlining what

Dr. Sheehan should say. The script contained false information, instructing Dr. Sheehan to state

he thought investors and customers were in "extremely capable hands" with ACH's new Chief

Operating Officer ("COO"), a person Dr. Sheehan has never worked with because that individual

was hired while Dr. Sheehan was on leave. The script also falsely conveyed that Dr. Sheehan *voluntarily* took a leave to "recharge."

48.     On October 18, 2024, Mr. Jbara texted Dr. Sheehan asking if ACH's lawyer had sent over the scripted "talking points for ███." Dr. Sheehan replied that he would not deliver those talking points because that would be "lying to the federal government." Mr. Jbara replied, "Ok good feedback for me to know!"

49.     Dr. Sheehan's reporting of ██████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████ are all protected activities under New York's whistleblower statute (N.Y. Lab. Law § 740). Under sections 2(a) and 2(c), ACH'S retaliation against Dr. Sheehan is illegal.

## ACH Terminates Dr. Sheehan

50.     On December 30, 2024, ACH held a Special Meeting during which ACH terminated Dr. Sheehan's employment, allegedly for cause. Notice and the meeting were timed so that Dr. Sheehan would be unable to change his international travel schedule and thus would not be able to attend the meeting.

51.     ACH did not notify Dr. Sheehan regarding the basis for ACH's determination that his termination was "for cause," nor did ACH interview him in connection with any purported investigation.

52.     Because ACH mischaracterized Dr. Sheehan's involuntary termination "for cause" in retaliation for his whistleblowing activity, he lost his right to exercise options granted to him under the Option Agreements. These options are worth tens of millions of dollars and once exercised, represent significant equity in ACH.

53.     By placing Dr. Sheehan on an involuntary leave, excluding him from Board meetings, and terminating him for cause (depriving him of his valuable vested stock options with a fair market value of tens of millions of dollars, among other damages), ACH engaged in retaliatory conduct against Dr. Sheehan for his engaging in protected whistleblower activity.

**COUNT I**
**Unlawful Termination/Retaliation**
<u>(New York Labor Law Section 740)</u>

Plaintiff incorporates by reference each and every allegation previously made herein as if the same were fully set forth.



54.     Dr. Sheehan had a reasonable belief that the ████████████████ was improper, ███████████████████████████████████████████████████ ██████████████████████████████████████

55.     Dr. Sheehan informed Mr. Jbara and subsequently the Board of Directors of █ ████████████ The Board of Directors had the authority to take corrective action ████████ ████████████

56.     Based on Mr. Jbara and the Board's inaction, Dr. Sheehan reasonably believed that ACH would not report ████████████████████████████████████████████ ████████████████████████████████████████.

57.     Dr. Sheehan's reporting of the misappropriation to the Board and to ████████ is protected activity.

58.     Additionally, Dr. Sheehan had a reasonable belief that ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████ was improper, █████████████████████

████████████████████████████████████████████████████████████

██████████████████████

59.    Dr. Sheehan informed Mr. Jbara of the ████████████ As Chairman of the Board, Mr. Jbara had authority to take corrective action regarding ████████████████

60.    Based on Mr. Jabra's remarks and past behavior when informed of a ████████ and the Board's inaction in response to such incidents, as well as Mr. Jbara and the Board's inaction in this instance, Dr.  Sheehan reasonably believed that ACH would not report ████████ ████████████████████████████████████████████████████████████ ███████████████████████████

61.    Dr. Sheehan's reporting of the ████████████ to the Board and to ██████████████ is protected activity.

62.    Further, Dr. Sheehan had a reasonable belief that ████████████████████ ████████████████████████████████████████████    was  improper, ████████████████████████████████████████████████████████████ ███████████████████████████

63.    Dr. Sheehan informed Mr. Jbara, Mr. Constantine, and other directors about ██ █████████████████████████

64.    As Chairman of the Board and CEO of ACH, Mr. Jbara and Mr. Constantine had authority to take corrective action.

65.    Based on ACH's past inaction in response to ██████████████████████ and Mr. Jbara and Mr. Constantine's lack of concern in response to being alerted ████████████ Dr. Sheehan reasonably believed that ACH would not report the ████████████████

██████████████████████████████████████████████████████

████████████████████████

66.     Dr. Sheehan's reporting of ███████████████ to the Board and to ██████████ ████ is protected activity.

67.     Additionally, Dr. Sheehan had a reasonable belief that conveying a misleading message to █████████████████████ was improper, ████████████████████████ ██████████████████████████████████████████████████████ ████████████████████

68.     Dr. Sheehan's refusal to participate in such conduct is protected activity.

69.     In direct response to Dr. Sheehan's protected activity, ACH took retaliatory actions. ACH placed him on administrative leave, and upon receiving notification of potential litigation from Dr. Sheehan's counsel, placed Dr. Sheehan on a three-month involuntary leave of absence. On December 30, 2024, ACH terminated Dr. Sheehan, purportedly for cause.

70.     Dr. Sheehan was an employee at-will and the Board could have terminated his employment for any lawful reason or no reason. By improperly characterizing his termination as for cause, he lost the right to exercise stock options with a fair market value of tens of millions of dollars, and was subjected to other damages by being forced out of the company he co-founded.

71.     ACH's retaliation against Dr. Sheehan is prohibited under New York law. As a direct and proximate result of Defendant's retaliatory conduct, Dr. Sheehan has suffered and will continue to suffer significant injury, including to his business and professional reputation, and his current and future employment opportunities, as well as substantial financial harm. Dr. Sheehan is entitled to an order of reinstatement and damages in the amount of all lost wages, stock options, benefits and other remuneration.

72.     The Court should also award attorney's fees pursuant to N.Y.L.L. § 740(5)(e) and punitive damages pursuant to N.Y.L.L. § 740(5)(g), on the basis that the actions taken by ACH were willful, malicious and/or wanton.

**COUNT II**
**Breach of Contract**
(Non-Statutory Stock Option Agreements)

73.     Plaintiff incorporates by reference each and every allegation previously made herein as if the same were fully set forth.

74.     On December 31, 2019, as a Participant in the Non-Statutory Stock Option Agreement, Dr. Sheehan executed the 2019 Non-Statutory Stock Option Agreement.

75.     Moreover, on August 5, 2021, as a Participant in the Non-Statutory Stock Option Agreement, Dr. Sheehan executed the 2021 Non-Statutory Stock Option Agreement.  The 2019 and 2021 Non-Statutory Stock Option Agreements are collectively referred to herein as the "Option Agreements."

76.     The Option Agreements are valid and enforceable contracts and are governed by the laws of the State of Delaware.  *See* Ex. 1 at § 9; Ex. 2 at § 9.

77.     The 2019 Non-Statutory Stock Option Agreement granted Dr. Sheehan options to purchase up to ▬▬▬ shares of ACH stock for ▬▬ per share, a considerable discount from its current fair market value.  Moreover, the 2021 Non-Statutory Stock Option Agreement granted Dr. Sheehan options to purchase up to ▬▬ shares of ACH stock for an exercise price of ▬▬ per share, a considerable discount from its current market value.

78.     According to the terms of each of the Option Agreements, if Dr. Sheehan is terminated for cause, he ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Ex. 1 at § 3(e); Ex. 2 at § 3(e).

79.    In terminating Dr. Sheehan's employment for cause for an improper purpose in retaliation for his whistleblowing activity, ACH also cancelled his options granted as a Participant in the Option Agreements, in breach of those Agreements.

80.    In the alternative, by terminating Dr. Sheehan's employment for "cause" where no cause existed, ACH breached the Option Agreements.

81.    As a direct and proximate result of Defendant's breach, Dr. Sheehan has lost the ability to exercise his options to purchase shares of ACH stock currently valued at tens of millions of dollars. As a Participant in the Non-Statutory Stock Option Plan, Dr. Sheehan is entitled to recover from ACH the damages flowing directly from ACH's breach.

### COUNT III
### Breach of the Covenant of Good Faith and Fair Dealing
(Non-Statutory Stock Option Agreements)

82.    Plaintiff incorporates by reference each and every allegation previously made herein as if the same were fully set forth.

83.    On December 31, 2019, Dr. Sheehan was granted options to purchase up to ███ shares of ACH stock for the Grant price of ███ per share.

84.    On August 5, 2021, Dr. Sheehan was granted options to purchase up to ███ shares of ACH Stock for the Grant price of ███ per share.

85.    Under Delaware law, the covenant of good faith and fair dealing is implied in all contracts and precludes one party to a contract from intentionally acting to deprive another party to the contract the fruits of the bargain struck.

86.    By terminating Dr. Sheehan for cause in retaliation for his protected whistleblowing activity, ACH acted intentionally to inequitably deny Dr. Sheehan of the benefit of the bargain struck in the Option Agreements.

87.     In the alternative, by terminating Dr. Sheehan for "cause" where no cause existed, ACH acted intentionally to inequitably deny Dr. Sheehan the benefit of the bargain struck in the Option Agreements.

88.     As a direct and proximate result of Defendant's action, Dr. Sheehan has lost the option to purchase in excess of ████ shares of ACH stock, which have a fair market value of tens of millions of dollars, among other damages. Dr. Sheehan is entitled to recover from ACH the damages flowing directly from ACH's deliberate breach of the covenant of good faith and fair dealing.

**WHEREFORE**, Plaintiff respectfully prays that:

i.   The Court enter an order declaring Dr. Sheehan's involuntary leave and eventual termination unlawful and retaliatory in violation of New York Whistleblower protections under N.Y. Lab. Law § 740 and awarding statutory damages including, enjoining Defendant from further retaliating against Dr. Sheehan for engaging in protected whistleblower activity; ordering ACH to immediately reinstate Dr. Sheehan to the same position he held before he was terminated and as Board member at ACH; awarding compensation for lost wages, benefits, and other remuneration; attorney's fees; a civil penalty of ten thousand dollars; and punitive damages.

ii.  The Court enter an order finding that ACH breached the Option Agreements with Dr. Sheehan and awarding to Dr. Sheehan the fair market value of his options or compelling Defendant to restore Dr. Sheehan's options; and

iii. The Court award such other and further relief as the Court deems just and proper.

Dated:  February 18, 2025                    Respectfully submitted,

                                             */s/ Joni S. Jacobsen*

                                             **DECHERT LLP**
                                             Joni S. Jacobsen
                                             Three Bryant Park
                                             1095 Avenue of the Americas
                                             New York, NY 10036
                                             (212) 698-3680
                                             joni.jacobsen@dechert.com

                                             Bina M. Peltz
                                             Cira Centre
                                             2929 Arch Street
                                             Philadelphia, PA 19104
                                             (215) 994-2236
                                             bina.peltz@dechert.com

                                             *Counsel for Plaintiff Stafford Sheehan*