UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Stafford Sheehan,

                    *Plaintiff,*

          -against-

Air Company Holdings, Inc.,

                    *Defendant.*

25-CV-932 (ARR) (PK)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

Plaintiff, Stafford Sheehan, Ph.D., brings this action against his former employer

defendant Air Company Holdings, Inc. ("AirCo"). In his complaint, Dr. Sheehan brings claims

for unlawful termination and retaliation under New York Labor Law, breach of contract, and

breach of the covenant of good faith and fair dealing. Following consolidation of this action with

an action brought by defendant AirCo, AirCo now brings counterclaims alleging that

Dr. Sheehan breached his duty of loyalty, duty of care, and contract terms governing disclosure

of proprietary information. Furthermore, AirCo seeks a declaratory judgment determining its

rights and obligations under stock option agreements entered between Dr. Sheehan and AirCo.

Pending before me is Dr. Sheehan's motion to dismiss AirCo's counterclaims. For the

reasons below, Dr. Sheehan's motion is granted in part and denied in part.

## BACKGROUND

### I.    Factual Background

In early 2017, Dr. Sheehan and Gregory Constantine founded AirCo, which was

incorporated in Delaware on August 14, 2017. Counterclaims ¶ 2, ECF No. 24. Mr. Constantine

served as AirCo's Chief Executive Officer. *Id.* AirCo's mission is to create products from carbon

1

dioxide, such as hand sanitizer, perfume, industrial chemicals, and fuels. *Id.* ¶¶ 4–5. Dr. Sheehan was employed as AirCo's Chief Technology Officer ("CTO") from August 2017 until December 30, 2024, and served as a director of the company from October 2020 until January 9, 2025. Answer ¶ 3, ECF No. 24. As part of his employment, Dr. Sheehan and AirCo executed the Proprietary Information Agreement ("PIA"), which categorized Dr. Sheehan as an at-will employee. Counterclaims ¶ 3.[1] As relevant here, Sheehan agreed to "not disclose or use any Proprietary Information, except as such disclosure or use may be required in connection with my work for the Company." PIA at 2. The PIA defined "proprietary information" as "all confidential, trade secret and/or proprietary knowledge, data or information of the Company," including "non-public information regarding Company personnel." *Id.*

In August 2024, a member of AirCo's Board of Directors (the "Board") suggested that Mr. Constantine should be removed from his role as AirCo's CEO. Counterclaims ¶ 14. At the time, Dr. Sheehan was AirCo's Chief Technology Officer and a member of its Board. *Id.* ¶ 11. That suggestion led the company to commence an internal investigation and review of leadership dynamics within AirCo. *Id.* ¶ 15. The investigation revealed various instances of misconduct by Dr. Sheehan. *Id.* ¶ 16.

First, employees reported that Dr. Sheehan was a difficult boss and poor manager. *Id.* ¶¶ 20–25.

---

[1] While AirCo states that the PIA is attached as Exhibit A to the Counterclaims, Counterclaims ¶ 3, it appears from the docket that its filing contained no attachments. In his motion to dismiss, Dr. Sheehan attached a copy of the PIA, *see* ECF No. 25-3, Ex. A ("PIA"), which I consider for purposes of deciding the instant motion. *See Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 n.3 (2d Cir. 2022) ("[D]istrict courts may permissibly consider documents other than the complaint for the truth of their contents if they are attached to the complaint or incorporated in it by reference . . . A document that is integral to the complaint and partially quoted therein may be incorporated by reference in full.") (quotation marks and citations omitted).

Second, the investigation revealed that in September of 2024, Dr. Sheehan falsely represented to a significant investor that Mr. Constantine would be removed as the Company's CEO, despite no Board vote approving that action. *Id*. ¶ 26. Dr. Sheehan made the same false representation, which AirCo characterizes as "non-public, confidential, proprietary information," to "at least two employees" and "at least four separate investors." *Id*. ¶¶ 28–29.

Third, Sheehan had misrepresented to the same significant investor that the Company had "plans" for an office in Connecticut. *Id*. ¶ 26. The investor, "as an explicitly listed condition precedent to their investment," required "that the Company have firm plans to maintain physical office space in Connecticut." *Id*. ¶ 27. Due to that condition, the Company's investment advisor had recommended that AirCo not move forward with this investor. *Id*. However, Dr. Sheehan, who "had been entrusted to take the lead" on negotiations with this investor, ignored the recommendation and instead "deliberately misrepresented" to the investor through a side letter that the Company had plans to maintain Connecticut office space. *Id*. Side letters are "peripheral terms proposed by an investor, in addition to their original investment terms, which augment the same and frequently provide that investor with certain levels of added access into the Company and its operations." *Id*. ¶ 31. At the same time, Dr. Sheehan "took efforts to conceal or minimize this representation from the Company when the investment was raised in discussions with the Board." *Id*. ¶ 27. Ultimately, the investor learned of the misrepresentations, and the Company returned the investor's investment and made a settlement payment. *Id*.

Fourth, in September of 2024, "Sheehan agreed to giv[e] a potential investor an observer seat on the Company's Board without Company approval." *Id*. ¶ 30. AirCo had previously directed Dr. Sheehan to "provide full disclosure of any and all side letters to the Company for leadership to review" before entering into such letters. *Id*. ¶¶ 30–31. Dr. Sheehan falsely

represented to a Company employee that he had obtained Company approval for this side letter. *Id*. ¶ 32. AirCo did not learn about the Board observer commitments Dr. Sheehan made with the potential investor until sometime "after Sheehan was placed on leave," requiring the company to renegotiate terms with that investor. *Id*.

Fifth, in September 2024, Dr. Sheehan retained an attorney on behalf of the Company without Board authorization. *Id*. ¶ 33. Sheehan "represented to that attorney that he had Board support to remove Mr. Constantine and negotiate a severance package." *Id*. That attorney later terminated his engagement with AirCo. *Id.*

On October 5, 2024, as a result of AirCo's initial findings, the Board voted to place Dr. Sheehan on paid administrative leave until January 1, 2025. *Id*. ¶ 17. While on administrative leave in October and November of 2024, Dr. Sheehan directed an AirCo employee to tell a company IT employee that he might lose his job if he released Dr. Sheehan's emails to AirCo. *Id*. ¶¶ 18–19, 34. As a result, that IT employee refused to produce Dr. Sheehan's emails. *Id*. ¶ 35.

On December 30, 2024, the Board voted to terminate Dr. Sheehan's employment for cause and remove him as an officer. *Id*. ¶ 37. On January 9, 2025, the Common Stockholders voted to remove Dr. Sheehan from the Board. *Id*. ¶ 38.

## II.    Procedural History

On February 12, 2025, AirCo filed suit against Dr. Sheehan in the Delaware Court of Chancery. Mem. in Supp. of Mot. to Transfer at 5, ECF No. 11. On February 18, 2022, Dr. Sheehan initiated the present action in this district. *See* Complaint, ECF No. 1. AirCo's case in the Delaware Court of Chancery was removed to the United States District Court for the District of Delaware, and was then transferred to this district. *See* Electronic Order of May 5, 2025. Following the May 6, 2025 order consolidating the transferred action with the instant case, *see*

Electronic Order of May 6, 2025, AirCo's claims in the Delaware action were filed as counterclaims in the present action. *See* Answer and Counterclaims, ECF No. 24.

In its first counterclaim, AirCo asserts that Dr. Sheehan owed a duty of loyalty to the company as an officer and director, and that he breached those duties by (1) misrepresenting AirCo's plans to open a Connecticut office to an investor; (2) misrepresenting to four investors that Mr. Constantine would be removed as CEO; (3) entering into a side letter agreement with an investor to give the investor an observer seat on AirCo's Board without review and approval; and (4) "[d]irecting an employee to pressure an IT employee away from releasing Sheehan's emails." Counterclaims ¶¶ 51, 52. Second, AirCo asserts that Dr. Sheehan owed a duty of care "[a]s a director and officer of the Company . . . in his role as Chief Technology Officer," and that he breached those duties. *Id*. ¶¶ 57, 58. Third, AirCo claims that Dr. Sheehan breached the PIA by disclosing "non-public, confidential information about the Company" to both "unauthorized internal employees" and at least four external investors. *Id*. ¶ 68.

Dr. Sheehan moved to dismiss AirCo's counterclaims on July 7, 2025. *See* Mot., ECF No. 25-1. On July 18, 2025, AirCo filed a memorandum in opposition. *See* Opp., ECF No. 27. Finally, Dr. Sheehan submitted his reply papers on July 29, 2025. *See* Reply, ECF No. 29.

## DISCUSSION

When a case is transferred under 28 U.S.C. § 1404, "the transferee district court must . . . apply the state law that would have been applied if there had been no change of venue." *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). The parties agree that Delaware law applies to the fiduciary duty claims. *See* Mot. at 5 n.5; Opp. at 3–4. The parties also agree that New York law applies to the breach of contract claims. *See* Mot. at 5 n.5; Opp. at 10–11. Finally, New York law

governs the breach of contract because Section 15 of the PIA provides that "[t]he laws of the State of New York shall govern this Agreement." PIA at 5.

## I.    Duty of Care

Dr. Sheehan argues that AirCo's duty of care claims against him fail because the exculpation clause in the company's certificate of incorporation protects directors from personal liability for monetary damages caused by breach of fiduciary duty. Mot. at 6–7.

"[O]fficers of Delaware corporations, like directors, owe fiduciary duties of care and loyalty," and "the fiduciary duties of officers are the same as those of directors." *Gantler v. Stephens*, 965 A.2d 695, 708–09 (Del. 2009). "To plead a care-based damages claim . . . , the plaintiff must plead facts supporting a reasonable inference that the defendant acted with gross negligence." *Firefighters' Pension Sys. of City of Kansas City, Missouri Tr. v. Presidio, Inc*., 251 A.3d 212, 254 (Del. Ch. 2021). However, Delaware law provides that "[a] corporation may adopt a provision in its certificate of incorporation exculpating its directors from monetary liability for an adjudicated breach of their duty of care." *Gantler*, 965 A.2d at 709 n.37 (Del. 2009) (citing 8 Del. C. § 102(b)(7)). Where directors "are protected by [an exculpation clause], . . . the complaint must be dismissed against the directors unless the plaintiffs have successfully pled non-exculpated claims for breach of the duty of loyalty against them." *In re Synthes, Inc. S'holder Litig.*, 50 A.3d 1022, 1032 (Del. Ch. 2012). By contrast, an exculpation clause may not shield a corporation's officers. *Id*.

The parties agree that AirCo's Certificate of Incorporation includes a clause exculpating its directors "[t]o the fullest extent permitted by law," Mot. at 7; Opp. at 4–5, and that the clause shields AirCo's directors from duty of care claims, *see id*. However, the parties disagree on whether that clause shields Dr. Sheehan's conduct because he served as both an officer and

director in the company at all relevant times. AirCo contends that the exculpation clause does not shield actions taken in a dual capacity as a director and officer, and that its counterclaims may proceed because they do not "relate[] to actions Sheehan took solely as director." Opp. at 5. Dr. Sheehan contends that the exculpation clause shields actions taken in a dual capacity, and that the counterclaims must be premised on actions taken solely in his capacity as an officer. Mot. at 7.

Dr. Sheehan has the better of the argument. Under Delaware law, an exculpation clause prohibits duty of care liability against an officer-director defendant for actions taken in a dual capacity. For a duty of care claim not to be shielded by an exculpation clause, the challenged conduct must have been taken solely in the defendant's capacity as an officer. *See Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1288 (Del. 1994) ("where a defendant is a director and officer, only those actions taken solely in the defendant's capacity as an officer are outside the purview of Section 102(b)(7)" (citing R. Franklin Balotti & Jesse A. Finkelstein, *Delaware Law of Corp. & Business Org.* § 4.19, at 4–335 (Supp. 1992)). Thus, a duty of care claim cannot proceed where the allegations "fail[] to highlight any specific actions [the officer-director] undertook as an officer (as distinct from actions as a director)." *Arnold*, 650 A.2d at 1288.

Critically, AirCo's Counterclaims do not differentiate between Dr. Sheehan's dual roles. AirCo's duty of care claim is expressly premised on duties that Dr. Sheehan owed "[a]s a director and officer of the Company." Counterclaims ¶ 57. Although AirCo alleges that Dr. Sheehan breached those duties "in his role as Chief Technology Officer," that statement is wholly conclusory, as it is unsupported by any facts indicating that the challenged actions were "taken solely in [his] capacity as an officer." *Arnold*, 650 A.2d at 1288 (quotation marks omitted). For example, AirCo does not delineate Dr. Sheehan's responsibilities in each role by, for example, citing to its certificate of incorporation, bylaws, or employment contracts.

Instead of offering such facts, AirCo argues that I may infer the capacity in which the challenged conduct was undertaken based on the general principle that "the board through bylaws and resolution delegates day-to-day authority to officers." Opp. at 4 (quotation marks omitted). Because AirCo's "allegations center directly on the day-to-day process of running AirCo," rather than the "high-level oversight [to which] directors are typically confined," AirCo contends that its "well-plead [sic] allegations" fall outside the exculpation clause. *Id*. However, that argument is mistaken. In evaluating the present motion to dismiss, I must determine whether AirCo has alleged sufficient facts regarding *its* operations and the capacities in which *Dr. Sheehan* acted. AirCo cannot satisfy that standard by speculating that Dr. Sheehan's challenged conduct would "typically" be undertaken by an officer based on general observations about how corporations "typically" divide duties between their officers and directors. *Id*. Even if it were possible to determine whether the challenged actions would "typically" be undertaken by an officer or director, AirCo's argument rests on the assumption that its division of roles followed that of the "typical" corporation. Such "speculation is insufficient to withstand a motion to dismiss." *MECO Elec. Co. v. Siemens Indus., Inc.*, No. 21-CV-09166, 2022 WL 4085832, at *8 (S.D.N.Y. Sept. 6, 2022).

In sum, AirCo has failed to allege any actions taken solely in Dr. Sheehan's capacity as an officer. Since actions taken in a dual officer-director capacity fall within the scope of AirCo's exculpation clause, I agree with Dr. Sheehan that AirCo has failed to allege any non-exculpated duty of care claims. Therefore, I dismiss AirCo's duty of care claims without prejudice.

## II.    Duty of Loyalty

Dr. Sheehan next argues that AirCo's duty of loyalty claims should be dismissed because he did not act in bad faith or receive a personal benefit from his actions. Mot. at 8–9.

Under Delaware law, directors and officers owe a fiduciary duty of loyalty to the corporation, which "mandates that the best interest of the corporation and its shareholders take[ ] precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 33 (Del. Ch. 2014) (quotation marks omitted). Encompassed within that duty is the "requirement to act in good faith, which is a subsidiary element . . . of the fundamental duty of loyalty." *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 115 A.3d 535, 549 (Del. Ch. 2015) (quotation marks omitted). A director or officer acts in bad faith "where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006) (citations omitted). In short, the duty of loyalty and good faith require "specific allegations . . . sufficient to permit a finding that the director [or officer] faced a conflict" or "intentionally act[ed] with a purpose other than that of advancing the best interests of the corporation." *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 102 A.3d 155, 189–190 (Del. Ch. 2015).

AirCo advances five arguments in support of why Dr. Sheehan breached his duty of loyalty.

First, AirCo claims that Dr. Sheehan breached his duty of loyalty by "deliberately misrepresent[ing] to [an investor] . . . that the Company did have plans to maintain Connecticut office space." Counterclaims ¶ 27. "Delaware law explicitly rejects the notion that a board of directors can act loyally by consciously deciding to violate positive law in pursuit of greater profits." *Lebanon Cnty. Employees' Ret. Fund v. Collis*, 287 A.3d 1160, 1207–08 n.21 (Del. Ch.

2022). Accordingly, allegations that a fiduciary made "statements that were knowingly false and caused investors to invest in the Company" are sufficient to plead that the fiduciary acted in bad faith and thereby violated his duty of loyalty. *Jeter v. RevolutionWear, Inc.*, No. CV 11706, 2016 WL 3947951, at *13 (Del. Ch. July 19, 2016); *see also In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 798 (Del. Ch. 2009) (holding that director and officer breached his fiduciary duty of loyalty by engaging in fraudulent schemes), *aff'd sub nom.*, 11 A.3d 228 (Del. 2011). Here, AirCo alleges that one of its investors, "as an explicitly listed condition precedent to their investment, . . . required that the Company have firm plans to maintain physical office space in Connecticut," and that Dr. Sheehan "deliberately misrepresented" to that investor "that the Company did have plans to maintain Connecticut office space." Counterclaims ¶ 27. Based on these allegations, AirCo argues that Dr. Sheehan fraudulently induced an investment into AirCo, and thereby "acted with a purpose other than that of advancing the best interests of the Company." *Jeter*, 2016 WL 3947951, at *13.

Dr. Sheehan contends that AirCo's allegations do not demonstrate bad faith because AirCo failed to "allege that the Company had not discussed potentially opening up a Connecticut office" or that Dr. Sheehan acted "without the knowledge of the Chairman of the Board and other Board members." Mot. at 12. However, neither of those allegations is required to state a claim in this context. AirCo alleges that the investor in question required "*firm plans* to maintain physical office space in Connecticut," Counterclaims ¶ 27 (emphasis added), and therefore Dr. Sheehan's representation that AirCo had such plans would remain knowingly false regardless of whether the Board had engaged in inchoate discussions about the *possibility* of opening a Connecticut office. Furthermore, Board knowledge of Dr. Sheehan's misrepresentations would not cleanse his conduct, as "Delaware law provides no safe harbor to high-level fiduciaries who group together

to defraud." *In re Am. Int'l Grp., Inc.*, 965 A.2d at 807 (Del. Ch. 2009); *see also United States v. Sullivan*, 118 F.4th 170, 219 (2d Cir. 2024) (observing generally that "it does not cleanse fraud if the fraudster manages to get a corporate endorsement where the defendant knew that his practices were fraudulent" (quotation marks omitted and alterations adopted)). Thus, it is unnecessary for AirCo to allege that other Board members were unaware of Dr. Sheehan's fraudulent inducement. Indeed, their knowledge would demonstrate, at most, that those Board members also violated their duty of loyalty. *See Hampshire Grp., Ltd. v. Kuttner*, No. CIV.A. 3607, 2010 WL 2739995, at *30 (Del. Ch. July 12, 2010) (observing that "no officer or employee has the right to make a corporation a law breaker"). Therefore, AirCo's duty of loyalty claim may proceed under this argument. Of course, if discovery demonstrates that AirCo had plans to open a Connecticut office or that Dr. Sheehan had a reasonable basis to believe that such plans existed or would materialize, then AirCo's duty of loyalty claim under this argument fails.

Second, AirCo claims that Dr. Sheehan breached his duty of loyalty by "agree[ing] to giv[e] a potential investor an observer seat on the Company's Board without Company approval," despite directives from AirCo that "any and all [side] letters should be proposed and reviewed by leadership before being entered into." Counterclaims ¶¶ 30, 31. Although allegations that an officer or director "knowingly exceeded [his] authority are sufficient to state" a duty of loyalty claim, AirCo has failed to allege that Dr. Sheehan did so here. *Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296, 330 (Del. Ch. 2022). AirCo concedes that Sheehan was "entrusted to take [the] lead" on "negotiations" with investors, and AirCo does not allege that Dr. Sheehan entered into a contract on behalf of AirCo granting that investor an observer seat or that Dr. Sheehan's agreement legally bound AirCo. Counterclaims ¶¶ 27, 30–32. Absent such allegations, the Counterclaims merely allege that Dr. Sheehan negotiated preliminary terms,

as he was entrusted to do. In that context, Dr. Sheehan's "agree[ment] to giving a potential investor an observer seat," indicates only that Dr. Sheehan agreed to later present that term to AirCo. *Id*. ¶ 30. Critically, the Counterclaims allege that Dr. Sheehan was required to obtain leadership approval before "enter[ing] into," *i.e.*, executing, a side letter term. *Id*. ¶ 31. It does not allege that Dr. Sheehan was required to obtain such approval before negotiating a term with a prospective investor. Nor is that a reasonable inference, as that interpretation envisions a redundant process in which Dr. Sheehan was required to obtain approval to negotiate a term and to then present that term again for approval once it had been negotiated. AirCo is, of course, free to clarify the nature of its directives to Dr. Sheehan upon amendment.

Furthermore, AirCo's allegation that Dr. Sheehan "falsely misrepresented" to a "Company employee [that] he had obtained Company approval for this particular side letter" does not establish bad faith. Counterclaims ¶ 32. Again, AirCo does not allege that Dr. Sheehan "entered into" a side letter. Instead, the Counterclaims suggest that Dr. Sheehan agreed to a preliminary term that would later be presented to AirCo for its approval. *Id*. ¶ 31. Given that Dr. Sheehan was entrusted to "lead" negotiations with investors, I cannot infer that he acted in bad faith in claiming that he was authorized to negotiate such preliminary terms. Therefore, AirCo fails to allege that Dr. Sheehan violated that directive because there is no indication that any such term providing for an observer seat was executed. Moreover, the Board's disagreement with the proposed preliminary terms, and subsequent decision to "renegotiate with that investor for granting information rights instead of a formal observer seat," does not establish that Dr. Sheehan acted in bad faith by negotiating in a preliminary, non-binding fashion. *Id*. ¶ 32.

Third, AirCo claims that Dr. Sheehan breached his duty of loyalty by misrepresenting to "four investors that Mr. Constantine would be stepping down as CEO, despite knowing the

Board had made no decision to this effect." *Id*. ¶ 52. Alternatively, AirCo argues that those statements "[d]isclosed non-public, confidential information . . . about the Company." *Id*. Neither formulation states a claim.

Where a corporate fiduciary "speaks outside of the context of soliciting or recommending stockholder action, such as through public statements made to the market [or] statements informing shareholders about the affairs of the corporation," the fiduciary owes a duty not to speak falsely. *See In re Wayport, Inc. Litig.*, 76 A.3d 296, 315 (Del. Ch. 2013) (quotation marks omitted). However, breach of that duty requires that the fiduciary "deliberately minsinform[ed]" or "knowingly disseminate[d] false information." *Id*. Moreover, under Delaware law, "[s]tatements of opinion and predictions about the future usually are not actionable," and may only be considered a misrepresentation where the statements "were known to be false when made or were made with a lack of good faith . . . . belief in their truth." *Mooney v. E. I. du Pont de Nemours & Co.*, No. CV N17C-01-374, 2017 WL 5713308, at \*6 (Del. Super. Ct. Nov. 28, 2017), *aff'd*, 192 A.3d 557 (Del. 2018); *see also Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc*., 854 A.2d 121, 148 (Del. Ch. 2004) ("That a statement of opinion did not prove to be an accurate forecast of the future does not mean that the predicting party misstated any actual fact.").

AirCo repeatedly alleges that Dr. Sheehan's statements were knowingly false because the Board had not made a formal decision or voted to remove Mr. Constantine. *See*, *e.g.*, Counterclaims ¶ 29. However, Dr. Sheehan is not alleged to have represented to investors that the Board had taken such an action. Instead, Dr. Sheehan allegedly stated that Mr. Constantine "*would* be removed as CEO," which is a prediction about forthcoming action. Counterclaims ¶ 29 (emphasis added). AirCo's allegations do not demonstrate that Dr. Sheehan's predictions were

knowingly false or made without a good faith basis. Indeed, AirCo acknowledges that at least one other Board member had "raised the suggestion that Mr. Constantine should be removed as CEO." *Id*. ¶ 14. Moreover, at the time that Dr. Sheehan stated that Mr. Constantine would be removed, AirCo was conducting "an investigation and internal review to assess the leadership dynamics within the Company" in response to that Board member's suggestion. *Id.* ¶ 15. While Dr. Sheehan's predictions that Mr. Constantine would be removed proved to be incorrect, AirCo has failed to allege that those predictions were baseless or that Dr. Sheehan "conjured up lies." Opp. at 9.[2]

AirCo's secondary argument, that Dr. Sheehan's statements improperly disclosed "confidential information" to investors, fares no better. Counterclaims ¶ 52. "A fiduciary breaches its duty of loyalty by improperly using confidential information . . . to advance [its] own personal interests and not those of its beneficiary." *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 858 (Del. Ch. 2022) (quotation marks omitted). AirCo's bareboned allegations fail to state a claim. To the extent that Dr. Sheehan's statements can be understood as disclosing confidential information, they revealed the existence of an internal effort to terminate Mr. Constantine. However, AirCo does not allege any facts describing the context in which Dr. Sheehan made his statements to investors, and therefore fails to allege that his disclosure of a predicted shakeup in company leadership was an improper use of that confidential information.

---

[2] The sole case cited by AirCo in support of its misrepresentation theory, *Hoch v. Alexander*, No. 11-CV-217, 2011 WL 2633722 (D. Del. July 1, 2011), is totally inapposite. In that case, the court held that the plaintiff-shareholder had stated a duty of loyalty claim by alleging that defendant board members had prepared a "false proxy statement" containing "a material misstatement [that] interfered with the voting rights of shareholders." *Id*. at *6. However, it is well-settled under Delaware law that proxy statements and other requests for shareholder action are subject to heightened standards of disclosure and candor that are inapplicable outside of that context. *See In re Wayport, Inc. Litig*., 76 A.3d at 314–15.

In other words, AirCo alleges no facts suggesting that Dr. Sheehan sought "to advance [his] own personal interests, rather than those of the corporation." *Sorrento Therapeutics, Inc. v. Mack*, No. 2021-0210, 2023 WL 5670689, at *24 n.213 (Del. Ch. Sept. 1, 2023).[3] For example, AirCo does not allege that Dr. Sheehan engaged in any self-dealing with respect to the investors, usurped any corporate opportunities, or had any personal interest conflicting with that of the Corporation. Nor have I found any Delaware authority for the proposition that informing investors about potential changes to a company's leadership is inherently wrongful, especially where those investors are not alleged to have been affiliated with the fiduciary.

In any event, AirCo's claim that Dr. Sheehan violated his duty of loyalty is preempted by its breach of contract claim. Delaware law "hold[s] that a claim for breach of contract occupies the field and preempts overlapping claims for breach of duty against corporate fiduciaries." *New Enter. Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 562–63 (Del. Ch. 2023) ("[I]f the contract claim addresses the alleged wrongdoing by the director, any fiduciary duty claim arising out of the same conduct is superfluous.") (collecting cases). AirCo's third cause of action asserts that Dr. Sheehan's statements to investors breached its contractual confidentiality agreement (the PIA) and is therefore coextensive with AirCo's breach of loyalty claim premised on that conduct. The contract claim therefore supersedes the duty of loyalty claim. *See Seibold v. Camulos P'rs LP*, No. CIV.A 5176, 2012 WL 4076182, at *21 (Del. Ch. Sept. 17, 2012) ("It is settled that an agent may not misuse the confidential information of its principal. Here, however, Camulos' claim that Seibold breached his fiduciary duty by misusing confidential information alleges facts identical

---

[3] Indeed, AirCo's brief does not even attempt to argue or cite any authority in support of that point. Instead, AirCo's arguments rest on its theory that Dr. Sheehan "spread[] falsehoods under the guise of sharing confidential information," which I have rejected above. Opp. at 9.

to Camulos' claim that Seibold breached his contractual duties by misusing Confidential Information, and is thus foreclosed as superfluous." (cleaned up)).

Fourth, AirCo contends that Dr. Sheehan violated his duty of loyalty by "[d]irecting a Company employee to advise a Company IT employee that . . . the production of Sheehan's emails was improper," which "necessitated the placing of the IT employee on investigatory leave due to that employee's refusal to produce Sheehan's emails." Counterclaims ¶¶ 34–35. I agree with AirCo that, to the extent that Dr. Sheehan had engaged in prior wrongdoing in breach of his fiduciary duties, Dr. Sheehan's efforts "seeking to obstruct AirCo from . . . evidence" of that wrongdoing was against the best interest of AirCo and in breach of his duty of loyalty. Opp. at 10. This violation, nevertheless, is contingent on Dr. Sheehan's alleged breach of fiduciary duty.

Finally, AirCo argues that all of the above actions were part of Dr. Sheehan's "shadow-campaign to oust [AirCo's] CEO" and that he "prioritized his own desire to control AirCo." Opp. at 6, 7. That argument fails, as "the duty of loyalty is owed to the corporation and the stockholders at large, not to [its CEO]." *OptimisCorp v. Waite*, No. CV-8773, 2015 WL 5147038, at *61 (Del. Ch. Aug. 26, 2015), *aff'd*, 137 A.3d 970 (Del. 2016). Directors and officers are permitted—and even required—to remove a corporation's CEO if they believe that removal is in the corporation's best interest. *Id*. at *58 (holding that directors did not breach duty of loyalty to corporation by collaborating to remove its CEO "based on a belief that he was doing a poor job"). Thus, "a takeover scheme" is not inherently a breach of the duties of loyalty and good faith. *Id*. at *59.  For a takeover scheme to breach these duties, it must have been animated by a "motive or interest *not shared with the other stockholders* generally," and that motive or interest must "conflict," rather than merely "coincide[]," with the best interests of the corporation. *Id*. (emphasis added). AirCo cannot state a claim by simply alleging that Dr. Sheehan "disliked [the

CEO] and sincerely wanted him gone;" it must allege that Dr. Sheehan pursued removal based on an underlying motivation that conflicted with the company's best interests. *Id*. at 58.

AirCo has failed to allege any facts permitting such an inference. Its sole allegation is that another board member "coordinat[ed] with Sheehan" to "raise[] the suggestion that Mr. Constantine should be removed as CEO." Counterclaims ¶ 14. However, no facts indicate that Dr. Sheehan had an improper purpose for doing so. For example, AirCo does not allege that Dr. Sheehan maneuvered to install himself as CEO, harbored personal animus against Mr. Constantine, or otherwise derived some personal financial benefit that did not inure to all shareholders generally. And while AirCo argues in briefing that it has "specifically alleged" that Dr. Sheehan "prioritized his own desire to control AirCo," Opp. at 6, that allegation is absent from the Counterclaims and therefore cannot be raised in an opposition to a motion to dismiss. *See Crianza v. Holbrook Plastic Pipe Supply, Inc.*, No. 22-CV-7685, 2024 WL 216696, at *3 (E.D.N.Y. Jan. 19 2024). In any event, that allegation would be conclusory, and is unsupported by any facts indicating that removing Mr. Constantine would have provided Dr. Sheehan with greater control over AirCo or that Dr. Sheehan even sought to pursue that objective. Accordingly, AirCo has failed to allege that Dr. Sheehan "intentionally act[ed] with a purpose other than that of advancing the best interests of the corporation." *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 369–70 (Del. 2006).

**III.    Breach of Contract**

The PIA "prohibit[ed] Sheehan from disclosing Proprietary Information," which was defined as "all confidential, trade secret, and/or proprietary knowledge, data or information of the Company." Counterclaims ¶¶ 65–66. The PIA further provided that "Proprietary Information" includes "non-public information regarding Company Personnel." *Id*. ¶ 67. AirCo

claims that Dr. Sheehan breached the PIA by "disclosing non-public, confidential information about the Company, the Company's Board of Directors, and the Company's business to both non-executive, unauthorized internal employees as well as third parties, including at least four investors." *Id*. ¶ 68. Specifically, Dr. Sheehan "falsely represented" that Mr. Constantine would be removed as AirCo's CEO to "at least two [AirCo] employees" and to "at least four separate investors." *Id*. ¶¶ 29, 68.

To state a claim for breach of contract under New York law, a plaintiff must sufficiently allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Spotlight Ticket Mgmt. Inc. v. Daigle*, No. 23-CV-10035, 2025 WL 1295069, at *2 (S.D.N.Y. May 5, 2025) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). I agree with Dr. Sheehan that AirCo has failed to sufficiently allege breach and damages.

A "cause of action for breach of contract composed entirely of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *Boccardi Cap. Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*, No. 05-CV-6882, 2009 WL 362118, at *3 (S.D.N.Y. Feb. 9, 2009) (quotation marks omitted), *aff'd*, 355 F. App'x 516 (2d Cir. 2009). Accordingly, defendant's allegation that Dr. Sheehan breached the PIA by "disclosing non-public, confidential information about the Company, the Company's Board . . . , and the Company's business" is far too vague and conclusory to state a plausible claim. Counterclaims ¶ 68. Defendant cannot tautologically allege that Dr. Sheehan breached his contractual duty to not disclose non-public confidential information by disclosing non-public, confidential information. *See Boccardi Cap. Sys., Inc.*, 2009 WL 362118, at *4 (dismissing contract claim for

breach of confidentiality agreement where plaintiff failed to "identify any facts or categories of confidential information that defendant used in contravention of that agreement").

The Counterclaim's specific allegation, that Dr. Sheehan "falsely represented" to internal employees and external investors that "Mr. Constantine would be removed as CEO," fares no better. Counterclaims ¶¶ 29, 68. AirCo's impending termination of Mr. Constantine cannot be understood as "confidential, trade secret, and/or proprietary knowledge, data or information of the Company," nor can it be understood as "non-public information regarding Company Personnel," precisely because this proposition was *false*. *Id*. ¶¶ 65–67. Indeed, confidential information has been defined as "[k]nowledge or facts not in the public domain but known to some." CONFIDENTIAL INFORMATION, Black's Law Dictionary (12th ed. 2024). Here, Mr. Constantine's removal is neither knowledge nor fact, and was instead a failed prediction. Interpreting the PIA to protect falsities would "strain the contract language beyond its reasonable and ordinary meaning." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (quotation marks omitted and alterations adopted).[4] Indeed, AirCo cites no authority, nor have I found any, that an employer's proprietary information include falsities. In any event, Dr. Sheehan's prediction that Dr. Constantine "would be removed" was not knowingly false.

Even if Mr. Constantine's impending removal as CEO (or lack thereof) constitutes Proprietary Information, AirCo has failed to allege that Dr. Sheehan's disclosure of that information breached the PIA. As Dr. Sheehan argues, the PIA permitted "disclosure or use" of

---

[4] AirCo's interpretation of the PIA to protect both truths and falsities would lead to absurd results. To take an extreme example, a statement that Mr. Constantine was secretly two children in a trench coat would constitute Proprietary Information belonging to AirCo, as that purported identity is "non-public" and "regarding Company Personnel." Counterclaims ¶ 67.

19

Proprietary Information as "may be required in connection with [his] work for the Company,"

and AirCo fails to allege any acts demonstrating that Dr. Sheehan's disclosures were not "in

connection with [his] work." PIA at 2. Nor is that a reasonable inference from the sparse

allegations provided. AirCo acknowledges that Dr. Sheehan was "entrusted to take lead" on

negotiations with some (or perhaps all) investors. *See*, *e.g.*, Counterclaims ¶ 27. AirCo makes no

allegations that Dr. Sheehan's statements were not "in connection with" those negotiations. PIA

at 2.

Finally, defendant has failed to plead damages. Although AirCo argues that it spent "vast

amounts of money, time, and resources" to fix "reputation [sic] and operational risks" caused by

Dr. Sheehan's breach, Opp. at 12, "[d]amages to reputation generally are not recoverable in a

breach of contract action under New York law," *Smith v. Positive Prods.*, 419 F. Supp. 2d 437,

453 (S.D.N.Y. 2005) (collecting cases). Reputational damages are available "only in exceptional

cases when the plaintiff proves specific business opportunities lost as a result of its diminished

reputation." *Id.* (quotation marks omitted). AirCo fails to make such allegations here. Although

AirCo alleges that "Sheehan's misrepresentations" to four investors "jeopardized the Company's

ability to generate further investment from these investors," AirCo does not allege that it lost any

investments from those investors. Counterclaims ¶ 29. AirCo's "strained" relationship with those

investors, *id.*, is insufficient to state a claim. *See Soto v. Federal Express Corp.,* No. 06–CV–

5413, 2008 WL 305017, at *7 (E.D.N.Y. Feb. 1, 2008) ("It is well-settled in New York that a

claim for loss of reputation arising from a breach of contract is not actionable.").

AirCo also contends that it suffered damages when another investor "ultimately withdrew

a potential investment as a result of Sheehan's baseless lawsuit"—*i.e.* the present litigation. Opp.

at 12. That argument is meritless. AirCo does not even argue, much less allege, that the filing of

this suit breached the PIA. *See* Opp. at 10–12. Nor could it. The PIA provides that "an individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may . . . use the trade secret information in the court proceeding." PIA at 2. Under New York law, "a plaintiff may recover only for damages that are directly and proximately caused by a defendant's breach of contract," and therefore "causation is an element—and a crucial one—of the plaintiff's *prima facie* case." *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 526 (2d Cir. 2004) (quotation marks omitted and alterations adopted). AirCo cannot seek damages arising from conduct that is entirely district from Dr. Sheehan's purported breach. Any damages caused by the filing of this suit are therefore irrelevant to the breach of contract claim.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to dismiss defendant's counterclaims is GRANTED in part and DENIED in part. Plaintiff's motion to dismiss defendant's counterclaim alleging breach of the duty of loyalty (Count I) is denied as to Dr. Sheehan's alleged misrepresentations regarding Connecticut office space and directive to withhold his company emails.

Defendant's counterclaims for breach of the duty of loyalty (Count I) are dismissed without prejudice as to allegations regarding the promised board observer seat, representations made regarding Mr. Constantine's possible removal, and Dr. Sheehan's alleged campaign to oust Mr. Constantine. Defendant is granted leave to amend these counterclaims. Defendant's counterclaim for breach of the duty of care (Count II) is also dismissed with leave to amend. Defendant's counterclaim for breach of contract (Count III) is dismissed.

SO ORDERED.

          /s/_____

Allyne R. Ross
United States District Judge

Dated:         November 10, 2025
                  Brooklyn, New York